## In re BEARDSLEY.

### No. 9544.

District Court, D. Maryland.
May 14, 1941.

Irving B. Grandberg, of Baltimore, Md., for York Ice Machinery Co.

Galvin & McCourt, of Baltimore, Md. (J. Irvin McCourt, of Baltimore, Md.), for A. E. Kaestner Co.

W. Brewster Deen, of Denton, Md., for trustee.

COLEMAN, District Judge.

This case is before the Court upon the petition of the York Ice Machinery Corporation, a judgment creditor of the bankrupt, Cecil J. Beardsley, to review an order of the Referee finally ratifying a private sale of the bankrupt's assets subject to certain liens, but free and clear of certain other liens (including the judgment lien of the petitioner). This sale the trustee in bankruptcy had been authorized to make, subject to the right of creditors to object thereto, by a previous order of the Referee.

The petitioner asserts that the sale was invalid because the bankrupt's property should have been sold subject to and not free and clear of its judgment lien, unless the proceeds of the sale are sufficient to pay the amount of petitioner's judgment lien with interest and costs, in full, as a preferred claim on such proceeds. The trustee, on his part, asserts that the sale was the one most advantageous to all parties in interest that could have been made and that therefore, it should be finally ratified and the proceeds distributed as directed by the Court. The purchaser is the Walnut Bank Farms, a partnership and not a creditor of the bankrupt.

The bankrupt traded under the name of Beardsley Milk Company and was engaged at Denton, Maryland, in the business of pasteurizing milk, making ice cream and chocolate milk drinks, and delivering these products to consumers on various routes on the Eastern Shore of Maryland. He purchased his raw milk direct from the farmer. On October 19th, 1940, he made a general assignment for the benefit of his creditors of all of his property to Wesley E. Thawley, trustee, who pursuant to an order of the Circuit Court for Caroline County, Maryland, proceeded to act as trustee on behalf of Beardsley's creditors, continuing to operate the business until November 16th, 1940. On that date, pursuant to authority of the State Court, he accepted an offer, subject to ratification by the State Court, for the purchase of all of Beardsley's assets by the same purchaser, namely, the Walnut Bank Farms, that is now before this Court in these bankruptcy proceedings as the purchaser of the same assets upon the same terms and conditions. Ratification was refused by the State Court because Thawley, trustee, had no authority under the jurisdiction of the State Court, to sell the property free and clear of any liens; and also, because of the fact that three days after the trustee accepted the offer, namely, on November 19th, 1940, a petition to have Beardsley adjudicated an involuntary bankrupt was filed in this Court by his creditors and he was so adjudicated on the same day. Thawley, trustee, had, before offering the property at private sale, endeavored to sell Beardsley's property at public sale pursuant to authority of the State Court but receiving no bids, resorted to private sale. It was the trustee's contention while subject to the jurisdiction of the State Court, and has also been since under the jurisdiction of the bankruptcy court, that although he had operated the business at a loss, it could best be sold as a whole, as a going concern.

The same Wesley E. Thawley being duly elected trustee in bankruptcy by Beardsley's creditors, was authorized to continue the business pending disposition of Beardsley's assets and he petitioned this Court for authority to accept the offer that had previously been made at private sale for the bankrupt's property, upon the same terms and conditions and for the same consideration. Such authority was granted by order of the Referee subject to prior notice being given to all creditors as required by the Bankruptcy Act and their right to be heard in objection to such sale. Such requirements were complied with by the Referee; and the present petitioner and another secured creditor, the E. A. Kaestner Corporation, excepted to the ratification of the sale, the exceptions of the present petitioner, made for the reasons already explained, being overruled by the Referee. The exceptions of the other creditor were withdrawn. The sale was finally ratified by the Referee and the matter is now before this Court on the petition of the York Ice Machinery Corporation to review this action of the Referee.

The appraisal of the bankrupt's property made pursuant to the requirements of the Bankruptcy Act shows his realty to be worth $1,200 and his personalty $4,512.30. Summarized, the conditions of the sale now under review were that the bankrupt's realty and personalty should be disposed of as a unit for $4,000 cash, the purchaser assuming two mortgages held by third parties on the realty amounting to $880.49 and also three conditional sales contracts covering personalty amounting to $1,477.47, these mortgages and contracts all being valid and prior in date to the liens of the present objecting creditor and also of the Kaestner Company, thus making a total purchase price, including the value of the assumed liens, $6,357.96. Apportioning this sum between the realty and personalty on the basis of the respective appraised values, we have $1,335 as representing the proceeds of the sale of the realty, and $5,022.96 as representing proceeds of the sale of the personalty. Deducting the amount of the assumed mortgages on the realty from the $1,335 thus allocated to the realty, it follows that of the $4,000 cash purchase price, $454.51 represents the cash proceeds of the sale of the realty. Likewise, deducting the amount of the assumed conditional sales contracts on the personalty from the allocated sum of $5,022.96, it follows that the balance or $3,545.49 of the $4,000 cash purchase price represents the cash proceeds from the sale of the personalty.

In addition to the five liens just mentioned which the purchaser of the bankrupt's property assumed, there were outstanding against his property at the time of the sale certain other liens held by the present petitioner, the York Ice Machinery Corporation, and by another secured creditor already referred to, the E. A. Kaestner Corporation, and it was with respect to these additional liens that the sale was made free and clear, pursuant to the Referee's order. The Kaestner Corporation had a judgment lien for approximately $832.78 and a chattel mortgage for approximately $2,100. The validity of these liens has not been challenged because of the fact that they were obtained prior to four months of the filing of the petition in bankruptcy. The York Company has a judgment for approximately $525 against Beardsley which became a lien on the realty by virtue of its recordation on July 11th, 1940 (see Maryland Code Annotated (1939) Article 26, Section 20); and on the personalty by virtue of a writ of fieri facias issued and levied on July 31st, 1940. Since, however, the petition to adjudicate Beardsley a bankrupt was filed in this Court on November 19th, 1941, while the first mentioned lien is not voidable because it arose prior to the four months' period, the last mentioned is voidable since it was acquired after July 19th, that is, within four months from the filing of the petition in bankruptcy. Therefore, pursuant to the provisions of Section 67, sub. a(1) of the Bankruptcy Act, 11 U.S.C.A. § 107, sub. a(1), if Beardsley was insolvent at the time this last mentioned lien arose, as seems reasonably certain, the trustee is required to take the requisite steps to avoid it. See Fischer v. Pauline Oil Co., 309 U.S. 294, 60 S.Ct. 535, 84 L.Ed. 764.

Having thus reviewed the somewhat complicated facts, we now turn to a consideration of the legal principles which must control in determining whether the action of the Referee was proper under the Bankruptcy Act, in ratifying the sale by the trustee.

■ The power of a bankruptcy court to sell property of a bankrupt free and clear of liens, although not conferred in terms by the Bankruptcy Act, is nevertheless well established. Van Huffel v. Harkelrode, 284 U.S. 225, 52 S.Ct. 115, 76 L.Ed. 256, 78 A.L.R. 453. But it is equally well settled that this power should not be exercised unless it is reasonably clear that the property will bring more than the encumbrances and expenses of sale. See Tawney v. Clemson, 81 F.2d 300; Federal Land Bank of Baltimore v. Kurtz, 70 F.2d 46; Union Electrical Co. v. Hubbard, 242 F. 248, all of which are decisions of the Circuit Court of Appeals for this Circuit. See, also, Hoehn v. McIntosh, 6 Cir., 110 F.2d 199; Coulter v. Blieden, 8 Cir., 104 F.2d 29, certiorari denied, 308 U.S. 583, 60 S.Ct. 106, 84 L.Ed. 488; In re Miller, 7 Cir., 95 F.2d 441. The basis for this rule is that lien creditors must be satisfied in full before the bankrupt's other creditors, represented by his trustee, can acquire any interest in his property. Section 64, sub. a of the Bankruptcy Act, 11 U.S.C.A. § 104, sub. a, fixes the order of distribution of the bankrupt's estate, but only with respect to those whose rights are junior to the rights of those holding valid liens at the date of the filing of the petition in bankruptcy.

See In re Centralia Refining Co., D.C., 35 F.Supp. 599; In re Penticoff, D.C., 36 F.Supp. 1.

It is to be noted that although the specific language in the Bankruptcy Act protecting valid liens, Section 67, sub. d, 11 U.S.C.A. § 107, sub. d, as it appeared prior to the amendments of 1938, is not carried into the new Act, the requirement of the law remains the same because the present Section 70, 11 U.S.C.A. § 110, provides, in effect, that the trustee's title is subject to valid liens, since he acquires only the title of the bankrupt. Therefore, the trustee should not assume jurisdiction over a bankrupt's lien-encumbered property unless there is some chance of there being an equity available for general creditors.

■ However, if a trustee has some reasonable ground to believe, at the time of making the sale, that there is an equity in the purchase price over and above all liens, even though the official appraisal of the property was not, in fact, sufficient to yield such equity, and even though the sale finally results in no equity, a court may be justified in ratifying the sale, particularly when, as is true of the present case, the purchaser has already been given possession and has been authorized by the trustee to operate the business, in a bona fide effort to prevent further loss to creditors. In the present case, the trustee apparently at the time of the sale, erroneously assumed that there were no tax liens on the property that had priority. Apparently not realizing any necessity for segregating the liens of the two creditors which are now under review, and for allocating the $4,000 cash purchase price between the personalty and realty, he was prima facie warranted in believing that these two known valid liens, when considered together, could be satisfied in full out of this amount, leaving a balance of approximately $500. Furthermore, he was justified under the circumstances in assuming, even though he had operated the bankrupt's business at a loss, that a sale of the business as a going concern, with realty and personalty treated as a unit, was likely to produce the best price.

■ Coming now directly to a consideration of the claims of the petitioner, the York Ice Machinery Corporation, and of the Kaestner Corporation, it appears that the former will be entitled to realize little if anything on its claim. Separate lien creditors having liens against different types of assets cannot, under the Bankruptcy Act, have their claims marshalled together and transferred indiscriminately to the proceeds of a sale of the bankrupt's property. To do so would permit individual creditors to share in the proceeds of the sale of property against which they never had any valid claim.

■ The rights of the several creditors to the proceeds of the sale as allocated between realty and personalty must, therefore, be treated separately. However, before determining the order in which the proceeds are to be distributed, it is necessary to allocate between lien holders certain expenses of preserving and selling the bankrupt's property because, although there is nothing in the Bankruptcy Act expressly providing for such allocation, it is well settled that lien holders as well as other creditors must bear their proportionate shares of the expense of preserving and liquidating their security. See Byrer v. Bushong, 4 Cir., 108 F.2d 594; Tawney v. Clemson, supra. See, also, In re Prindible, 3 Cir., 115 F.2d 21; Louisville Title Mortgage Co. v. Louisville Storage Co., 6 Cir., 93 F.2d 1008.

■ Since the Kaestner Corporation did not object in the first instance to the sale being made, and furthermore, since it withdrew its objections to the ratification of the sale before the order of ratification was signed, it seems clear that this creditor's claim must be reduced to the extent of its proportionate share of these expenses. Tawney v. Clemson, supra. While the attitude of the petitioner, the York Company, is different, the question of its bearing a pro rata share of these expenses becomes unimportant for the reason, as hereinafter shown, that it has little chance of realizing anything in the order of priority that must be enforced.

The expenses of preserving and liquidating the bankrupt's property since the bankruptcy court acquired jurisdiction, which may fairly be said to have inured to the benefit of the lien holders, may be summarized as follows: Advertising and printing expenses $70; auctioneer's fee $25; Referee's costs $275; court costs advanced by creditors $55; trustee's bond premium $16; his statutory commissions on the sale $120; his other allowable expenses $50; appraiser's fee $5 and estimated court costs $10, or a total of $626.

On the above figure the claim of the Kaestner Company for $2,932.78 should be

reduced by a share of the above expenses to the extent of approximately $290, representing the proportion of the above total which the Kaestner claim bears to the total purchase price realized. Thus the Kaestner Company is left with an allowable claim of $2,642.78. Taking up first the $3,-545.49 distributable proceeds of the sale of the bankrupt's personalty, after deducting the $100 statutory exemption allowed the bankrupt and Kaestner's allowable claim of $2,642.78 reduced by its pro rata share of expenses, there is left $802.71, out of the cash proceeds from the sale of the bankrupt's personalty.

■ We next turn to a consideration of what treatment is to be accorded to the payment of taxes. It is well settled that any taxes which constitute liens must be treated like other liens coming ahead of the general estate and entitled to satisfaction along with such other liens in the ordinary order of seniority, as fixed by State law. Such was true before the amendments of 1938 to the Bankruptcy Act, and these amendments have not altered this requirement. Miners Savings Bank v. Joyce, 3 Cir., 97 F.2d 973; Dunn v. Interstate Bond Co. et al., 5 Cir., 68 F.2d 364, certiorari denied, 292 U.S. 645, 54 S.Ct. 779, 78 L.Ed. 1496; In re Brannon, 5 Cir., 62 F.2d 959, certiorari denied, Ryan v. City of Dallas, 289 U. S. 742, 53 S.Ct. 692, 77 L.Ed. 1489. However, tax liens, like other liens, must be reduced by their proportionate share of expenses in preserving and liquidating the property which is subject to them. In re Pennsylvania Central Brewing Co., 3 Cir., 114 F.2d 1010.

■ It is well settled in Maryland that taxes are not liens per se, Parlett v. Dugan, 85 Md. 407, 409, 37 A. 36, but arise only by virtue of and in accordance with explicit statute. Thompson v. Henderson, 155 Md. 665, 142 A. 525, 58 A.L.R. 1213; Home Owners' Loan Corp. v. City of Baltimore, 175 Md. 676, 3 A.2d 747. Tax liens on personalty are acquired in Maryland only by levy of distraint. Since no mention of such levy appears in this proceeding, it is reasonable to suppose that no such liens have arisen. On the other hand, tax liens on realty arise automatically under Maryland law (Maryland Code Ann. (1939) Article 81, § 72) which provides that all state and county taxes on real estate shall constitute liens on the property taxed from the date payable. It would appear from what has been disclosed in the present case, although it is not pos-

sible, without further information which the Referee should require, to determine with accuracy just what the precise facts are, that the realty sold by the trustee was burdened with liens for taxes for several years past, all of which arose prior to the lien of the present petitioner, the York Company, against the realty. By Maryland law (Md.Code Ann. (1939), Article 81, § 150) when any property is sold by judicial sale in any form, all taxes on the property, regardless of whether they constitute liens or not, are entitled to general priority in payment over all other claims, secured or unsecured. However, since the priority provisions of the Bankruptcy Act take precedence over a conflicting State statute, this provision of the Maryland law is ineffectual to disturb the order of priority for taxes, not constituting liens, established by Section 64, sub. a of the Bankruptcy Act, subsection 4 of which covers all unsecured taxes, and subsection 5, all general priorities accorded by State law which do not amount to liens, 11 U.S.C.A. § 104, sub. a (4) and (5). Interest and penalties must be included in determining the amount of the tax lien. See Baltimore Trust Co. v. Interocean Oil Co., D.C., 30 F.Supp. 560.

As already stated, in all likelihood taxes constituting first liens on the bankrupt's realty will absorb all of the $454.51 distributable as cash proceeds from the sale of the realty. It will be the duty of the Referee to determine this fact with exactitude. If there is any excess, then the petitioner, the York Company, is entitled to it under its lien against the realty for $525. It is obvious that in any event all of the cash proceeds from the sale of the realty must be distributed among secured claimants.

■ There remains to be considered the order of priority in the distribution of $802.71 which, as we have seen, is the distributable cash balance from the sale of the personalty. The order of distribution of this balance is as follows: After all secured claims have been satisfied, first in order of priority as established by Section 64, sub. a of the Bankruptcy Act, 11 U.S.C.A. § 104, sub. (a) are general administration expenses. However, the bankruptcy court may, at any stage of the proceedings, order court costs and referee's and trustee's fees and commissions to be paid out of any assets of the estate. See General Order in Bankruptcy No. 35,

11 U.S.C.A., following section 53. It, therefore, would seem proper to allow now the payment of fees and commissions due the Referee and trustee and the estimated court costs, which appear to total $405. This will leave a balance of $396.29 in the estate. Since this will not be sufficient to pay in full all remaining administration expenses, it must be prorated among such expenses. We have already set forth the pro rata shares of administration expenses believed to be properly assessable against the lien claimants. In these are not included the advances made by the trustee; that is to say, his actual out of pocket expenses in running the business, because while it appears that he was justified in incurring these expenses as he did, while carrying on the bankrupt's business by court order, which amounted to $794.17, these expenses are properly assessable against other claimants, but not lien claimants. Likewise, similar treatment must be accorded to such allowance, if any, as the Referee may see fit to make to the attorney for the trustee for his legal services, after due notice and hearing, in accordance with the provisions of the Bankruptcy Act, have been accorded with respect to such attorney's claim for $250 for services.

If we assume that after making distribution as aforesaid, there should be anything left, those who would next have a valid claim to it would be wage claimants if any such claimants exist, for three months wages. 11 U.S.C.A. § 104, sub. a (2). Following these would come statutory liens, including those for taxes on personalty only, arising within the four months' period, since such are made valid and enforceable by Section 67, sub. b and sub. c of the Bankruptcy Act, 11 U.S.C.A. § 107, sub. b and, sub. c. Next, would come claims of creditors for litigation expenses as provided in Section 64, sub. a (3), 11 U.S.C.A. § 104, sub. a (3). Then come any unsecured taxes, 11 U.S.C.A. § 104, sub. a (4), the general priority which, as already explained, is given to all state and county taxes by Maryland law, not prevailing in bankruptcy. That is to say, the Bankruptcy Act controls since it expressly specifies the order of priority to be accorded unsecured taxes. Finally, come debts of any character, not heretofore considered, but nevertheless entitled to priority under State or Federal law, including rent, 11 U.S.C.A. § 104, sub. a (5). Thereafter, if anything should be left for distribution, it would be prorated among the general unsecured creditors of the bankrupt.

Finally, to summarize, this is a case where a trustee in bankruptcy, overzealous to realize something for creditors, temporarily operated a losing business and then sold it when, had he investigated more carefully the large number and variety of encumbrances upon the bankrupt's property, he would have had disclosed to him the fact that the situation was hopeless from the start, from the point of view of the bankrupt's general creditors; but having made the sale and having, in good faith, put the purchaser in possession, although in advance of the time when he would ordinarily have been justified in so doing, all of the equities in the case require that the sale be allowed to stand, even though lien creditors may suffer somewhat thereby, it being virtually impossible to revert to the status quo ante.

As indicated in one or more parts of this opinion, the data submitted to the Court has not been adequate in some instances to enable the Court to determine, with entire accuracy, what is the amount of the particular claim. Therefore, the Referee will be expected to re-audit the figures submitted to the Court and herein referred to, and to make proper corrections therein, after taking additional testimony if the same is found to be necessary.

An order will be signed in accordance with this opinion, affirming the action of the Referee in ratifying the sale, and referring the case back to the Referee for further action consistent with this opinion, to the end that he shall, as promptly as possible, make distribution to the various claimants in the order herein set forth, and for the amounts as he may find due, after full verification of the figures used in this opinion.