VERMONT FEDERAL SAVINGS AND LOAN
ASSOCIATION *v.* WICOMICO COUNTY,
MARYLAND ET AL.

[No. 17, September Term, 1971.]

*Decided October 18, 1971.*

The cause was argued before HAMMOND, C. J., and BARNES, McWILLIAMS, FINAN, SINGLEY, SMITH and DIGGES, JJ.

*John P. O'Ferrall,* with whom was *Stanley G. Robins* on the brief, for appellant.

*David H. Clark, County Attorney,* for appellees.

FINAN, J., delivered the opinion of the Court.

This is an appeal from a decision of the Circuit Court for Wicomico County (Travers, J.) rendered pursuant to a petition for declaratory relief filed by the appellant, Vermont Federal Savings and Loan Association (Vermont), and by the Union Trust Company of Maryland (Union Trust).

Two secured loan transactions and the priority of delinquent personal property taxes are involved in this dispute. On June 21, 1968, Vermont loaned $120,000.00 to Delmarva Home Furnishings, Inc. (Delmarva), a retail

sales business operating in Salisbury, Maryland, which loan was secured by a mortgage on the realty of Delmarva located in Wicomico County and recorded of even date among the Land Records of that County. In the second loan transaction, which occurred on October 27, 1969, Delmarva executed a confessed judgment note in the amount of $225,000.00 to the Farmer's Bank of Willards, Maryland. Farmer's Bank took a security interest in Delmarva's stock and furnishings which it perfected on February 6, 1970, by filing a financing statement among the Financing Records of Wicomico County. The confessed judgment note and the security interest were subsequently assigned to Union Trust.

Delmarva soon defaulted on both loans. Upon default, Vermont instituted foreclosure proceedings and Union Trust exercised its right of possession over the stock and furnishings as provided in Code (1964 Repl. Vol.) Art. 95B, § 9-503 Uniform Commercial Code. During the course of these proceedings the appellee, Wicomico County, filed tax claims totaling $8,050.28 against the proceeds in the hands of the trustee under the mortgage foreclosure sale. The appellee's claim consisted of the following:

| | | |
|---|---|---|
| Maryland Corporation Taxes ....1969, 1970 | $3151.26 |
| Maryland Corporation Taxes ...1970, 1971 | $3350.62 |
| Real Property Taxes ........ ........ ..1970, 1971 | $1548.40 |

The Maryland Corporation Tax includes both State and county personal property taxes.

The realty encumbered by Vermont's mortgage was sold on June 23, 1970, for the sum of $70,100.00 which, when applied to the amount of indebtedness at the time of sale, left Vermont with a deficiency of $42,064.65. The personalty encumbered by Union Trust's security interest was sold to Union Trust on June 23, 1970, for $40,-100.00 leaving a deficiency of $140,118.63.

On September 2, 1970, Vermont and Union Trust filed a joint petition for declaratory relief praying that the court determine the respective rights of Vermont, Union

Trust, and Wicomico County in the proceeds of both the sale of realty and personalty. However, the record shows only the filing of the claims with the trustee of the mortgage foreclosure sale. Judge Travers in a memorandum opinion filed January 22, 1971, ruled that by virtue of Section 248 of the Public Local Laws of Wicomico County and Maryland Code (1969 Repl. Vol.) Art. 81, § 202(b), Wicomico County obtained a valid and prior lien on the realty securing the Vermont loan and that the entire tax claim should be paid out of the proceeds of sale of the realty.

Code of the Public Local Laws of Wicomico County, § 248 (Everstine's ed. 1965 (Ch. 24 of the Laws of 1959 referred to as § 209)) provides:

> "All taxes due and owing by any taxpayer upon real or personal property, or both, shall be a prior lien on all the real estate of such taxpayer, and personal property may be sold to pay such taxes. Real estate, also, may be sold to enforce the payment of taxes following the procedure of Article 81 of the Annotated Code, Subtitle 'Tax Sales'."

And Code (1969 Repl. Vol.) Art. 81, § 202(b) provides:

> "Whenever a sale of either real or personal property of a corporation from which state taxes, are due and payable, shall be made by any sheriff, constable, trustee, receiver of other ministerial officer, under judicial process or otherwise all sums due and in arrears for state taxes from the corporation whose property is sold shall be first paid and satisfied after the necessary expenses incident to the sale; and the officer or person selling said property shall pay the same to the person whose duty it is to collect or receive said taxes under the laws of this State."

Vermont in its appeal (Union Trust did not appeal) does not resist the payment of the real property taxes

from the proceeds of the foreclosure sale but challenges payment of the personal property taxes from the proceeds of the sale of real estate. The thrust of Vermont's argument is that the Public General Law of the State, Article 81, Section 70, while providing that unpaid State, county and city taxes on real estate constitute a lien on the real estate in respect to which they are levied, makes no provision with regard to unpaid personal property taxes constituting a lien on the real estate of the owner of the personal property. It contends that Section 248 of the Public Local Laws of Wicomico County, which confers preferential treatment on unpaid personal property taxes with respect to the owner's real estate, is therefore unconstitutional as it conflicts with the Public General Law of the State. Appellant cites Article 11-A, Section 3 of the Constitution of Maryland as its authority, which section in part provides "* * * [E]xcept that in case of any conflict between said local law and any public general law now or hereafter enacted, the public general law shall control."

We fail to see where this section of the Constitution is applicable in the instant case for the simple reason that Article 11-A (adopted in 1915) applies to counties that have formed a charter government under the provisions of that Article and Wicomico County did not adopt a charter form of government until the year 1965, whereas Section 248 of the Public Local Laws of Wicomico County was enacted by the General Assembly of Maryland as Section 13, Ch. 14 of the Laws of 1904 and has existed substantially without change up to its latest amendment in Ch. 24 of the Laws of 1959. Indeed, it may have been more appropriate for Vermont to have argued that Section 248 of the Public Local Law violated Article 3, Section 33 of the Constitution of Maryland, which contains a prohibition against any special law "for which provision has been made by an existing law." Moser, *"County Home Rule,"* 28 Md. L. Rev., 327 at 338, n. 1; cf. *Beauchamp v. Somerset County,* 256 Md. 541,

261 A. 2d 461 (1970). However, for reasons which we shall develop we do not think that Section 248 of the Public Local Law violates any provisions of the Maryland Constitution.

The fallacy of Vermont's contention was highlighted by the lower court when it pointed out in its memorandum opinion that the Legislature in passing Article 81, Section 70, the Public General Law, gave to Frederick and Cecil Counties substantially the same benefits that it subsequently gave to Wicomico County when it enacted Section 248 of the Public Local Law. This becomes obvious when we read Article 81, Section 70 which provides:

> "From and after January 1, 1944, all unpaid State, county and city taxes on real estate shall be until paid, liens on the real estate in respect to which they are levied from the date they became or become payable; *and in Frederick and Cecil counties all unpaid taxes on personal property shall be a lien on the personal property and on the real estate of the owner of the personal property* in the same manner in which taxes on real estate are now liens on the real estate with respect to which they are levied." [Emphasis supplied.]

We see no conflict existing between Section 248, the Public Local Law and Article 81, Section 70, the Public General Law. In *City of Baltimore v. Sitnick & Firey,* 254 Md. 303, 255 A. 2d 376 (1969), we had occasion to assess municipal action taken under Article 11-A of the Maryland Constitution ("Home Rule Amendment") measured against a Public General Law. (The City by ordinance established certain minimum wage standards which were higher than those imposed by State law.) Referring to analogous cases, we noted:

> "In *Eastern Tar Products Corp., supra,* [176 Md. 290, 4 A. 2d 462] this Court upheld a Balti-

more City ordinance which tightened the procedure for the filing of tax exemptions for manufacturers, over and above that required by the public general law, stating:

"* * * As stated in 43 C.J. 219, in reference to the subject of municipal ordinances, "As a general rule, additional regulation to that of the state law does not constitute a conflict therewith. The fact that an ordinance enlarges upon the provisions of a statute by requiring more than the statute requires creates no conflict therewith. *Rossberg v. State,* 111 Md. 394, 74 A. 581." 254 Md. at 315.

In *Baltimore v. Sitnick & Firey, supra,* and in *Eastern Tar Products Corp. v. State Tax Commission,* 176 Md. 290, 4 A. 2d 462 (1939), we were concerned with the possible conflict between the Public General Law and a local ordinance enacted by the municipality. We viewed the ordinances as being of a supplementary nature and not in conflict with the Public General Law. Certainly, in the instant case, where both the Public General Law and Public Local Law are enactments of the same legislative body, the General Assembly, the rationalization that the Public Local Law is legislation of a supplemental nature, rather than a conflicting enactment, is all the more persuasive.

Public Local Law, Section 248 having provided that unpaid taxes on personal property, as well as on real estate, have a right to priority in payment provides the mechanics for this by incorporating by reference the procedure for such payment as set forth in Code, Article 81. Unquestionably, the foreclosure sale in the instant case was "under judicial process" and by a "trustee * * * or other ministerial officer," as set forth in Article 81, § 202 (b).

Vermont also stresses that our holding in *Wethered, Tr. v. Alban Tractor,* 224 Md. 408, 417, 168 A. 2d 358

(1961), that Article 81, Section 202(b) created no lien is of vital significance. However, we fail to see where this interpretation aids Vermont's case because it is clearly stated in *Wethered* that, "The statutes do no more than establish a priority of payment for unpaid taxes, * * *," (224 Md. at 417). Certainly, under the facts in this case such a mandate for preferential payment is sufficient to require the trustee in the foreclosure proceedings to pay the unpaid taxes due Wicomico County. Cf. *Universal v. Congressional*, 246 Md. 380, 384, 228 A. 2d 463 (1967), somewhat analogous, wherein the status of a landlord's lien was challenged and Chief Judge Hammond writing for the Court stated:

> "The cases have held that the quasi lien of the landlord becomes a lien either upon levy, * * * *or upon assertion of the right under the* statute of 8 Ann. Ch. 14, § 1, to be paid up to one year's rent in arrears *by another creditor levying execution or attachment."* 246 Md. at 384. (Emphasis supplied.)

Vermont further contends that the unpaid tax bills include State personal property taxes, as well as county personal property taxes, and that Section 248 of the Public Local Law thus creates a lien on real property for State personal property taxes, which is not given it by Article 81, Section 70, the Public General Law. We have stated that in our opinion Public Local Law, Section 248 is supplemental in character and not in conflict with the Public General Law. We would further note that the county tax collector is the agent for the State and has the responsibility for collecting State taxes in Wicomico County. Article 81, Section 51. In performing this duty, Public Local Law, Section 248, is unquestionably of great assistance, and we see no conflict between Section 248 and Article 81, Section 70. Additionally, the use of the word "taxes" in Section 248 is sufficiently broad to cover both State and county taxes. Cf. 51 *Op. Atty. Gen.* 218,

223 (1966) which opinion, although concerned with Article 81, Section 202(b) demonstrates the generic connotation to be given the definition of "taxes."

Vermont, while not conceding that the proceeds of the foreclosure sale should be available for the satisfaction of any personal property taxes owed by Delmarva, particularly objects to the payment of the personal property taxes for the 1970-71 fiscal year. We do not have the benefit of any comments from either the appellee or the lower court on this point although it was before the court below and is a proper issue on appeal. To answer the question thus raised we must first look at the chronological order of events.

The date of finality for the 1970-71 taxable year was January 1, 1970, (Article 81, Section 29A), although the taxable year ran from July 1, 1970, to June 30, 1971. The record reveals that the real estate was sold at the mortgage foreclosure on June 23, 1970. The declaration which originated this proceeding states that "pursuant to proceedings governed by Section 9-504 of the Uniform Commercial Code, the stock and furnishings * * * was sold on June 23, 1970, * * * to the Union Trust Company of Maryland." Wicomico County filed its personal property tax bills with the trustee under the mortgage foreclosure proceedings on August 19, 1970. At that time there had been no distribution by the trustee under the mortgage foreclosure sale of June 23, 1970, and the taxes for that year were due and payable when Wicomico filed the personal property tax bills with the trustee.

We are somewhat at a loss to understand why Wicomico County in its effort to collect the personal property taxes, chose to go against the proceeds of the sale of the real estate under the mortgage foreclosure, rather than from the personal property. The record offers no explanation for this. However, it may have been merely a question of convenience because under our interpretation of Section 248 of the Public Local Law and Article 81, Section 202(b) of the Code, Wicomico County had the

right to priority of payment of the unpaid personal property taxes from the proceeds of the mortgage sale of the real estate. Before leaving this point, however, with regard to the personal property taxes for the year 1970-71, we think it important to direct attention to Code, Article 81 4A (c), which in pertinent part, provides:

"Whenever any owner of tangible personal property * * * transfers all of said tangible personal property or said stock in business of which he is the owner as of the date of finality, between that date of finality and the semiannual date of finality next following, the owner or owners of said tangible personal property or said stock in business shall not be chargeable for any taxes levied or to be levied upon any assessment upon said tangible personal property or said stock in business for the taxable year next following such transfer and any assessment placed upon such tangible personal property or said stock in business, and any taxes levied upon any assessment for the said taxable year next following, shall be abated; provided, however, that the transferor so transferring said tangible property or said stock in business or the transferee thereof, files with the supervisor of assessments * * * or the Director of the State Department of Assessments and Taxations as the case may be, within twenty (20) days from the date of such transfer, a report of said transfer setting forth under oath, an itemized description of the property involved, the date and manner of the transfer thereof, the new owner or owners of said property and the address or addresses of said new owner or owners * * *. *Upon the failure of either the transferor or transferee to comply with said notice requirements within twenty (20) days from the date of such transfer, said transferor and transferee*

*shall be jointly and severally chargeable* for any taxes levied or to be levied upon any assessment upon said tangible personal property or said stock in business for the taxable year next following such transfer.\* \* \*." (Emphasis supplied.)

Although Union Trust which bought in the personal property of Delmarva on June 23, 1970, was an original party to this action, it did not appeal. The record is barren as to whether it or Delmarva made any attempt to comply with the aforegoing provisions of Article 81, Section 4A(c).

In view of this state of the record and of the joint and several liability imposed by the statute (Article 81, Section 4A(c)) on the transferor and transferee of personal property who failed to comply with the statute, and the fact that Delmarva unquestionably owned the personal property on the date of finality, we are of the opinion that Wicomico County did have a right to a priority for the payment of the personal taxes not only on the year 1969-70 but also for the year 1970-71.

*Order affirmed, appellant to pay costs.*