In re GUNDRY GLASS, INC., Debtor.

Gundry Glass, Inc., and FINOVA Capital Corp., Plaintiffs,

v.

The Mayor and City Council of Baltimore and the Internal Revenue Service.

Bankruptcy No. 98–5–2674–JS.
Adversary No. 99–5445–JS.

United States Bankruptcy Court, D. Maryland.

Jan. 4, 2001.

Irving E. Walker, Miles & Stockbridge, P.C., Baltimore, MD, for FINOVA Capital Corp.

Mary F. Keenan, Assistant Solicitor, Baltimore, MD, for Mayor and City Council of Baltimore.

Bradley C. Plovan, Office of the U.S. Attorney, Baltimore, MD, for IRS.

Gary R. Greenblatt, Mehlman & Greenblatt, LLC, Baltimore, MD, for Gundry Glass, Inc.

## MEMORANDUM OPINION GRANTING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

JAMES F. SCHNEIDER, Bankruptcy Judge.

Upon cross motions for summary judgment, this Court is called upon to decide two questions of law, namely whether the debtor and FINOVA Capital Corporation ("FINOVA") may avoid a prepetition tax lien of the Mayor and City Council of Baltimore (the "City") for unpaid personal property taxes, and whether the said municipal tax lien primed an earlier deed of trust lien of FINOVA upon proceeds of the debtor's real property that was sold free and clear of liens. A tax lien of the Internal Revenue Service is not the subject of this opinion. There are no material facts in dispute because the parties, including the IRS, joined in a stipulation of material facts. For the reasons stated, the plaintiffs' motion for summary judgment will be granted.

## FINDINGS OF FACT

1. On February 25, 1998, Gundry Glass, Inc., filed a voluntary Chapter 11 bankruptcy petition in this Court. The debtor in possession managed a psychiatric care facility located in the City of Baltimore. Since the filing, it has been engaged in the winding down of its business affairs and the liquidation of its assets.

2. On February 17, 1999, pursuant to this Court's Amended Consent Order Authorizing Sale of Assets Free and Clear of Liens, Claims and Interests [P. 128], entered on January 20, 1999, the debtor sold its Certificate of Need and its fee simple interest in the Gundry Glass Hospital Campus free and clear of claims, liens and encumbrances to the Sheppard and Enoch Pratt Foundation, Inc.

3. On June 7, 1999, the plaintiffs filed the instant complaint seeking (1) the avoidance of a purported lien of the Mayor and City Council of Baltimore against the proceeds of sale pursuant to Sections 544 and 545 of the Bankruptcy Code and (2) a determination that the plaintiff FINOVA Capital was entitled to the distribution of certain of the sale proceeds.

4. Pursuant to a promissory note dated September 20, 1995, FINOVA extended financing to the debtor in the original principal amount of $4,625,000. On the same date, FINOVA obtained security for the note by a mortgage, assignment of leases, rents and other income and security agreement recorded among the Land Records of Baltimore City at Liber SEB 5123, folio 032. The real property securing the mortgage is located in the City of Baltimore and is identified as 2 North Wickham Road, which comprised 20.666 acres. Pursuant to the assignment of leases, rents, guarantees, profits, issues and other income, the debtor assigned to FINOVA all leases, subleases, licenses, rental contracts, management agreements and other agreements relating to the use, operation, management or occupancy of 2 North Wickham Road and all rents, issues, profits, income, accounts receivable and proceeds due or to become due from the 2 North Wickham Real Property. On October 2, 1995, FINOVA perfected these security interests by filing a financing statement with the Maryland State Department of Assessments and Taxation.

5. The debtor failed to pay Federal withholding taxes before it filed its bank-

ruptcy petition. On the petition date, the debtor owed more than $2.7 million in Federal withholding taxes. On February 17, 1998, the IRS filed a notice of Federal tax lien in the Circuit Court for Baltimore City.

6. The debtor also failed to pay its prepetition personal property taxes to the City of Baltimore. On the petition date, February 25, 1998, the debtor's personal property taxes due the City were in arrears for the tax periods 1995 through 1998, in the total amount of approximately $31,338. The City did not file a notice of tax lien for personal property taxes in the Circuit Court, but relied upon a lien reporting system that it routinely employed. Personal property taxes for a particular tax year appear in the City's lien reporting system on the date the Maryland State Department of Assessments and Taxation certifies the assessment for the taxpaying entity (the "Assessment Certification Date"). The Assessment Certification Date varies from tax year to tax year. Personal property taxes are due and payable to the City of Baltimore on July 1 of each tax year. The Assessment Certification Dates, due dates and amount of personal property tax for each of the tax years for which the City alleged that the debtor is liable are summarized below:

| Tax Year | Amount of tax (Not including interest.) | Assessment Certification Date | Due Date |
|---|---|---|---|
| 7/1/95—6/30/96 | $15,406.56 | October 30, 1996 | July 1, 1995 |
| 7/1/96—6/30/97 | $ 7,503.80 | July 15, 1996 | July 1, 1996 |
| 7/1/97—6/30/98 | $ 7,592.13 | July 1, 1997 | July 1, 1997 |
| 7/1/98—6/30/99 | $15,106.39 | September 21, 1998 | July 1, 1998 |

7. On the date of the petition, February 25, 1998, the debtor was in default on its payments to FINOVA, with outstanding indebtedness in excess of $4.5 million. Nevertheless, FINOVA agreed to extend postpetition financing to the debtor, pursuant to the terms of a consent order [P. 24] entered March 13, 1998, and extended by Order entered August 6, 1998 (the "DIP Financing Order") [P. 96].

8. Pursuant to the DIP Financing Order, FINOVA was granted a first lien on all real and personal property and assets of the debtor and an administrative priority claim under 11 U.S.C. § 364(c)(1) to the extent of the postpetition loans. As of July 1, 1999, FINOVA held an outstanding prepetition claim in excess of $2.3 million. In addition, FINOVA held a postpetition priority secured claim for an amount in excess of $360,000 for funds advanced postpetition pursuant to the DIP Financing Order.

9. On March 31, 1998, the debtor filed its schedules [P 39]. The only real property that the debtor listed in Schedule A was identified as "2 North Wickham Road." The statutory tax lien of the Director of Finance, Baltimore City, was scheduled by the debtor in Schedule D, Creditors Holding Secured Claims, as to "2 North Wickham Road, Baltimore, Maryland 21229" in the amount of $31,338.67.

10. However, on April 2, 1998, when the City filed Claim No. 35 in the amount of $41,680.05., it was not alleged to be secured by the 2 North Wickham Road property titled in the name of the debtor, but rather secured by statutory tax liens on 2 South Wickham Road, owned by "Gundry Glass Properties Limited Partnership" for unpaid real property taxes in the amount of $1,722.94 and unpaid water bills in the amount of $106.01; 5002 Frederick Avenue, owned by "Gundry Glass, Inc." for unpaid personal property taxes in the amount of $31,787.79, and water charges of $1,732.72; and 110 South Wickham Road, titled in the name of "Gundry Glass Properties, Inc.", for unpaid real property taxes in the amount of $1,978.70.

11. On December 29, 1998, this Court entered a Consent Order Authorizing Sale of Assets Free and Clear of Lien, Claims and Interests, authorizing the debtor to sell its real property known as 2 North Wickham Road, Baltimore, Maryland, free and clear of claims, liens, encumbrances and interests, to Sheppard and Enoch Pratt Foundation, Inc., or its designee. Prior to closing the sale, the parties determined that the debtor's hospital campus, which the purchaser intended to buy as a

whole and was thought to consist of only 2 North Wickham Road, actually consisted of four parcels, namely, 2 North Wickham Road, 5002 Frederick Avenue, 110 South Wickham Road and 2 South Wickham Road.

12. The Land Records of Baltimore City indicated that title to 2 South Wickham Road was held by Gundry Glass Properties Limited Partnership, a non-debtor entity. Accordingly, the parties submitted an Amended Consent Order Authorizing Sale of Assets Free and Clear of Liens, Claims and Interests [P. 128], entered on January 20, 1999. The parties agreed to apportion the $800,000 proceeds of sale of the debtor's hospital campus to the parcels held by the debtor as follows: (a) $23,300.00 for the purchase of 5002 Frederick Avenue; $26,400.00 for the purchase of 110 South Wickham Road; and $750,300.00 for the purchase of 2 North Wickham Road.

13. Prior to closing, the purchaser obtained a lien certificate from the City of Baltimore for each of the debtor's properties. The lien certificates for 2 North Wickham Road and 5002 Frederick Avenue showed personal property taxes due in the total amount of $52,788.20 for the 1995–96 through 1998–99 tax years. The lien certificate for 110 South Wickham Road showed no outstanding personal property taxes due.

14. On February 17, 1999, the sale of the debtor's real property closed, but the proceeds of sale were not fully distributed because of the existence of multiple claims. Accordingly, some sale proceeds were placed in escrow. Currently the parties have escrowed $88,011.43, consisting of the net proceeds of the sale of 110 South Wickham and 5002 Frederick Avenue in the amount of $35,223.23 and $52,788.20, representing the amount of personal property taxes due the City for 1995–1999 on its lien certificates for 2 North Wickham Road and 5002 Frederick Avenue.

15. The Internal Revenue Service filed a notice of tax lien one week prior to the filing of the debtor's bankruptcy petition, claiming a prior lien against the proceeds of the sale of the other two parcels titled in the debtor's name, namely 110 South Wickham Road and 5002 Frederick Avenue.

16. The Mayor and City Council of Baltimore has refused to allow the deed to the Sheppard and Enoch Pratt Foundation to be recorded, claiming that $52,000 in unpaid personal property taxes must be paid at settlement to the City. The issue depends upon the determination of the priority of the two liens.

## CONCLUSIONS OF LAW

### SUBJECT MATTER JURISDICTION

This is a core proceeding arising under Title 11 of the U.S. Code in which the bankruptcy court may determine the validity, extent or priority of liens and other matters affecting the administration and liquidation of the bankruptcy estate. 28 U.S.C. § 157(b)(1), (b)(2)(A), (K) and (O).

### LIEN AVOIDANCE

■ State and local tax liens are statutory liens. *In re Carolina Resort Motels, Inc.*, 51 B.R. 447 (Bankr.D.S.C.1985). Section 545 of the Bankruptcy Code provides that under certain circumstances[1] a trust-

---

1. Section 545. Statutory liens

The trustee may avoid the fixing of a statutory lien on property of the debtor to the extent that such lien—

(1) first becomes effective against the debtor—

(A) when a case under this title concerning the debtor is commenced;

(B) when an insolvency proceeding other than under this title concerning the debtor is commenced;

(C) when a custodian is appointed or authorized to take or takes possession;

(D) when the debtor becomes insolvent;

(E) when the debtor's financial condition fails to meet a specified standard; or

(F) at the time of an execution against property of the debtor levied at the instance of an entity other than the holder of such statutory lien;

(2) is not perfected or enforceable at the time of the commencement of the case against

ee (who is the legal equivalent of a Chapter 11 debtor in possession under Section 1107(a)) may avoid the fixing of a statutory lien on property of the debtor.

■ Therefore, with respect to the portion of the complaint that dealt with the avoidance of the City's tax lien, only the debtor in possession and not a creditor such as FINOVA, is eligible under the Code to obtain relief, in the absence of specific authority conferred by the bankruptcy court. *City of Boerne v. Boerne Hills Leasing Corp. (In re Boerne Hills Leasing Corp.)*, 15 F.3d 57 (5th Cir.1994). It has also been held that a purchaser of real property cannot avoid the consequences of a property tax lien on the purchased realty where the lien represents taxes accrued before the date of sale. *Maryland Nat'l Bank v. Mayor and City Council of Baltimore*, 723 F.2d 1138 (4th Cir.1983).

■ In this case, not even the debtor may avoid the City's tax lien. The Fourth Circuit held in the case of *Hudgins v. IRS (In re Hudgins)*, 967 F.2d 973 (4th Cir. 1992), that a perfected tax lien was not avoidable in bankruptcy. "Under 11 U.S.C. § 545(2)," the Court said, "a bankruptcy trustee may avoid a statutory lien such as the IRS lien here to the extent that such lien: is not perfected or enforceable at the time of the commencement of the case against a bona fide purchaser that purchases such property at the time of the commencement of the case, whether or not such a purchaser exists." 967 F.2d at 975. The court upheld the validity of a tax lien filed in the debtor's defunct corporation's name, finding that it was sufficient to inform purchasers that the individual debtor's business assets were encumbered. Likewise, in the instant case, the City's tax liens filed in the names "Gundry Glass Properties Limited Partnership" were sufficient to put prospective purchasers on

notice that the debtor's property was encumbered by the instant tax lien for unpaid personal property taxes. Because the tax liens were perfected before the filing of the bankruptcy case, they are not subject to avoidance. Therefore, that portion of the complaint that requests lien avoidance must be denied. See Annot., 154 A.L.R. Fed. 1 (1999).

## PROPERTY OF THE DEBTOR'S ESTATE AND FINOVA'S PREPETITION SECURITY INTERESTS IN IT

Although Gundry Glass scheduled only 2 North Wickham Road in its schedules as the real property it owned, the Court finds that it was the owner of 2 South Wickham Road, 110 South Wickham Road and 5002 Frederick Avenue as well. 11 U.S.C. § 541(a). The sum of the four parcels comprised the whole of the hospital campus in which the debtor was in possession at the commencement of the case. The debtor was entitled to identify the real property in its schedules using the shorthand description of "2 North Wickham Road," treating that designation as the debtor's main address. It was sufficient to so identify the total of the real property by that designation in the bankruptcy schedules. The fact that title to the four parcels was in the name of various Gundry entities further supports this conclusion. This Court treated the real property sold as property of the estate, and the sale of the four parcels under the aegis of the bankruptcy court was proper because no one objected to it on the ground that all of the property sold was not that of the debtor's estate.

However, despite the finding that the debtor owned all of the real property, 2 North Wickham Road was the only real property that secured FINOVA's recorded deed of trust. Although the debtor's shorthand designation of the property was

---

a bona fide purchaser that purchases such property at the time of the commencement of the case, whether or not such a purchaser exists;

(3) is for rent; or
(4) is a lien of distress for rent.
*Id.*

sufficient for bankruptcy purposes, it did not confer a security interest upon FINOVA in all four parcels of the debtor's real property when the deed of trust was recorded in the land records. This is particularly so because the metes and bounds description contained in the mortgage clearly identified only the 2 North Wickham Road property and its acreage of only 20.666 acres, far less than the total amount comprising the campus. Therefore, FINOVA had no prepetition security interest in the other three parcels. However, by reason of the DIP Financing Order entered by this Court, FINOVA obtained a postpetition first lien on all real, personal and other assets of the debtor and an administrative priority claim under 11 U.S.C. § 364(c)(1) to the extent of the postpetition loans. FINOVA's postpetition secured status is not germane to the instant controversy.

The proceeds of sale currently held in escrow are property of the debtor's estate until disbursed pursuant to order of this Court, and being subject to this adversary proceeding, are in *custodia legis*.

## THE SALE FREE AND CLEAR OF LIENS

■ Because the hospital campus was property of the bankruptcy estate and was sold in its entirety free and clear of liens, such liens attached to the proceeds of sale in the order of their priority, or with respect to the tax liens, according to their priority as specifically provided by statute. *In re Beardsley*, 38 F.Supp. 799, 804 (D.Md.1941) ("It is well settled that any taxes which constitute liens must be treated like other liens coming ahead of the general estate and entitled to satisfaction along with such other liens in the ordinary order of seniority, as fixed by state law.")

The sale free and clear of liens covered only the debtor's real estate and its Certificate of Need. There was no mention of personal property being sold in the orders that authorized the sale. The City has not argued that the sale of any personal property occurred, although the Court notes

for the record that (1) the debtor must have owned personal property at some time because property taxes were unpaid on the debtor's personal property, and (2) the debtor and U.S. Trustee certified after the sale that there were no assets remaining for distribution to creditors. The record is devoid of any explanation as to what happened to the debtor's personal property upon which the City has asserted a first lien. No party to these proceedings has raised this issue and accordingly it is not before the Court.

## STATUTORY TAX LIENS AND THEIR PRIORITY AS FIRST LIENS

FINOVA argued that its lien and the recordation of its mortgage occurred before the date of choateness and perfection of the City's personal property tax lien, and that the cardinal rule for determining priority of liens is "First in time is first in right," absent statutory provisions to the contrary. *United States v. City of New Britain, Connecticut*, 347 U.S. 81, 74 S.Ct. 367, 98 L.Ed. 520 (1954). The City argued that its lien for unpaid personal property taxes against the real property owned by the debtor primed the lien of FINOVA.

■ Tax liens are legislative creations and arise only by statute. *In re Beardsley*, 38 F.Supp. 799 (D.Md.1941); *Thompson v. Henderson*, 155 Md. 665, 142 A. 525 (1928); *Parlett v. Dugan*, 85 Md. 407, 37 A. 36 (1897). A tax lien will only be given superpriority ahead of a prior perfected security interest when the applicable statute clearly provides such preferred treatment. *Farmers & Merchants Nat. Bank of Hagerstown v. Schlossberg*, 306 Md. 48, 507 A.2d 172 (1986), *citing ITT Diversified Credit Corp. v. Couch*, 669 P.2d 1355 (Colo. 1983) ("Before a statute creating a lien in favor of the state for unpaid sales taxes will be construed as giving such a lien priority over a mortgage, security interest, or other contractual lien which was perfected at the time the lien came into existence, the legislative intent that such priority be given must clearly appear from the

language of the statute." 669 P.2d at 1361); *Malakoff v. Washington,* 434 A.2d 432 (D.C.1981) ("This legislative intent to make claims or liens for taxes absolutely preferred must clearly appear from a strict construction of the statute." 434 A.2d at 435). The Court of Appeals also cited with approval *Steinfeld v. State,* 37 Ariz. 389, 294 P. 834, 835–36 (1930); *Wilkinson v. Wilkinson,* 51 Cal.App.3d 382, 384, 124 Cal.Rptr. 870 (1975); *Home Owners' Loan Corporation v. Hansen,* 38 Cal. App.2d 748, 102 P.2d 417, 420–21 (1940); *Gifford v. Callaway,* 8 Colo.App. 359, 46 P. 626, 628–29 (1896); *Linn County v. Steele,* 223 Iowa 864, 273 N.W. 920, 921, 924 (1937); *Magee v. Whitacre,* 60 Nev. 202, 106 P.2d 751, 754 (1940); *Burroughs v. State,* 195 Okl. 420, 158 P.2d 474, 475–76 (1944); *Miller v. Anderson,* 1 S.D. 539, 47 N.W. 957, 959 (1891); 3 C. Sands, SUTHERLAND ON STATUTES AND STATUTORY CONSTRUCTION § 66.08 (4th ed.1974). The Court also cited Annotation, 47 A.L.R. 378 (1927, 1930 Supp. in 65 A.L.R. 677), which states that the majority rule is that a tax lien "does not have priority over existing liens or encumbrances upon the real estate, in the absence of express provision to that effect". 306 Md. at 67–68, 507 A.2d at 182.

2. Section 14–804(a) and (b) provides as follows:

> Unpaid taxes are lien on real property; lien of unpaid taxes on personal property[.]
>
> (a) Real property.—All unpaid taxes on real property shall be, until paid, liens on the real property in respect to which they are imposed from the date they became or become payable.
>
> (b) Personal property.—All unpaid tax on personal property is a lien on the personal property and on the real property of the owner of the personal property in the same manner in which taxes on real property are now liens on the real property with respect to which they are imposed in all subdivisions of the State; provided that the lien will attach to the real property only after the notice has been recorded and indexed among the judgment records in the office of the clerk of the circuit court in the county where the land lies, or is recorded and indexed on the tax rolls of the subdivision.

■ Sections 14–804(a) and (b) and 14–805 of the Maryland Tax Property Code provide the statutory framework for the assertion of liens on real and personal property for unpaid real and personal property taxes, and establishes their respective priorities as to each type of property.[2] After considering both sections in the context of a contest between a private security interest and a tax lien, it is the opinion of this Court that the statute did not create a first priority lien on real estate for unpaid personal property taxes that would prime an antecedent private security interest such as that of FINOVA. In the words of the statute, "All unpaid tax on personal property is a lien on the personal property and on the real property of the owner of the personal property *in the same manner* in which taxes on real property are now liens on the real property." MD. CODE ANN., [TAX–PROP.] § 14–804(b) (emphasis added). The phrase, "in the same manner" is not the equivalent of "in the same priority." If the Legislature had intended to confer first priority upon liens for unpaid personal property taxes, it could have done so in the clearest terms by using the word "priority," as it did with respect to real estate tax liens. That it did not intend to do so is evident from the clear language of Section 14–805.

> Any subdivision, in lieu of recording in the appropriate court, may use a lien reporting system, and any subdivision so doing shall provide, on request, a lien report or memorandum with respect to any particular person.

MD. CODE ANN., [TAX–PROP.] § 14–804. Section 14–805 provides that unpaid taxes on real and personal property become respectively first priority liens on real and personal property:

> Priority of liens.
>
> (a) Real property.—From the date property tax on real property is due, liability for the tax and a 1st lien attaches to the real property in the amount of the property tax due on the real property.
>
> (b) Personal property.—From the date property tax on personal property is due, liability for the tax and a 1st lien attaches to the personal property in the amount of the property tax due on the personal property.

MD. CODE ANN., [TAX–PROP.] § 14–805.

In *Maryland National Bank*, 723 F.2d 1138 (1983), the Fourth Circuit held that MD. ANN. CODE. ARTICLE 81 § 70, the predecessor to § 14–804, gave priority to a lien for unpaid postpetition real property taxes over the prior perfected security interests of a secured lender, relating back the perfected tax lien to the date the tax became due.

Liens on real property for unpaid personal property taxes do not arise automatically, but only "attach to the real property" when the personal property taxes for a particular tax year appear in the City's lien reporting system on the "Assessment Certification Date," the date the Maryland State Department of Assessments and Taxation certifies the assessment. Those dates were October 30, 1996 for unpaid taxes due on July 1, 1995; July 15, 1996 for taxes due July 1, 1996; July 1, 1997 for taxes due that same day; and September 21, 1998 for taxes due on July 1, 1998. In *Maryland National Bank*, the Fourth Circuit also stated in *dicta* that recordation was a condition precedent for the establishment of liens for other than unpaid real estate taxes because "Maryland law recognizes the notice difficulties for purchasers or mortgagees in the summary creation of liens for taxes … where movable personalty is involved[.]" 723 F.2d at 1144. *See also In re Sylvia Development Corp.*, 178 B.R. 96 (Bankr.D.Md.1995) (holding that a lien for unpaid personal property taxes only attaches to real property after notice and recordation).

In *Sylvia Development*, Judge Keir of this Court also held that the holding in *Maryland National Bank*, to the effect that the perfection of postpetition real estate tax claims was not barred by the effect of the automatic stay,

> … would also apply to personal property tax claims arising in cases filed after the effective date (October 22, 1994) of the Bankruptcy Reform Act due to the amendment contained in the Reform Act, [which culminated] the disparate treatment of real and personal property

taxes [by amending Section 362(b) to] except from the automatic stay creation and perfection of post-petition ad valorem property taxes without distinction of real or personal property.

178 B.R. at 97–98. That issue is not present in this case. There is no question that the City's lien for unpaid real estate taxes, including sewer and water charges, takes priority over that of FINOVA, because liens on real estate for unpaid real estate taxes arise automatically "from the date they became or become payable." 14–804(a). But with respect to the City's lien for personal property taxes, it is subordinate to that of FINOVA.

Maryland Real Property Code § 3–104 contains the following relevant provisions:

### § 3–104   Prerequisites to recording

(a) Transfer on assessment books.— (1) Except as provided in paragraph (2) of this subsection, a deed or other instrument which effects a change of ownership on the assessment books under the Tax–Property Article may not be recorded until the property granted is transferred on the assessment books or records of the county where the property is located to the grantee or assignee named in the deed or other instrument. When submitting the deed or other instrument for transfer on the assessment books, the person offering the deed or other instrument, on request, shall mail or deliver to the person having charge of the assessment books, a statement of any building and improvement on the property granted. When the property is transferred on the assessment books, the person recording the transfer shall evidence the fact of transfer on the deed or other instrument. This endorsement is sufficient to authorize the recording of the deed or other instrument by the clerk of the appropriate court.

(b) Payment of taxes prior to transfer on assessment books or records; special provisions as to certain counties.—(1) Except as provided in subsection (c) of

this section, property may not be transferred on the assessment books or records until:

(i) All public taxes, assessments, and charges due on the property have been paid to the treasurer, tax collector, or director of finance of the county in which the property is assessed; and

(ii) All taxes on personal property in the county due by the transferor have been paid when all land owned by him in the county is being transferred.

\* \* \* \* \* \*

(c) Exceptions.—(1)(i) The requirements for prepayment of personal property taxes in subsection (b) of this section do not apply to grants of land made:

1. By or on behalf of any mortgagee, lien creditor, trustee of a deed of trust, judgment creditor, trustee in bankruptcy or receiver, and any other court-appointed officer in an insolvency or liquidation proceeding; or

2. By a deed in lieu of foreclosure to any holder of a mortgage or deed of trust or to the holder's assignee or designee.

(ii) Notwithstanding any other provision of law, and except as provided in subparagraph (iii) of this paragraph, after the recordation of a deed or other instrument that effects a grant of land described in subparagraph (i) of this paragraph, the land shall be free and clear of, and unencumbered by, any lien or claim of lien for any unpaid taxes on personal property.

(iii) Subparagraph (ii) of this paragraph does not apply to:

1. Any lien for unpaid taxes on personal property that attached to the land by recording and indexing a notice as provided in S> 14–804(b) of the Tax–Property Article prior to the recording of the mortgage, lien, deed of trust, or other encumbrance giving rise to the grant of land described in subparagraph (i) of this paragraph; or

2. Unpaid taxes on personal property owed by the transferee or subsequent owner of the land after a grant of land described in subparagraph (i) of this paragraph.

Md. Real Prop.Code § 3–104(a), (b), (c). "Real property taxes and related water and sewer charges are, as a practical matter, prior to the mortgage because they must be paid prior to the recordation of the trustee deed to the purchaser." ALEXANDER GORDON, IV, GORDON ON MARYLAND FORECLOSURES, § 14.01 (3d ed.1994).

Section 3–104(c) was amended by Laws of Maryland, ch. 498, effective July 1, 2000. The City argued that the change in the law means that prior to the effective date of July 1, 2000, personal property tax liens that arose after the recordation date of a mortgage or other security interest must have had priority over the prior perfected security interest. This Court disagrees with that proposition because there is nothing in the statute to support it. In fact, the original purpose of Senate Bill 12, which amended Section 3–104(c), was stated to be:

FOR the purpose of clarifying that the lien on real property for unpaid tax on personal property is subordinate to all other liens perfected against the real property prior to the attachment of the lien ... by repealing and reenacting with amendments Article Tax Property Section 14–804(b).

4 Laws of Maryland 2000 Advance Sheets, 2659–60. The clarifying amendment to have been added to Section 14–804(b) stated:

AND THE LIEN [for unpaid personal property taxes] WILL BE SUBORDINATE TO ALL OTHER LIENS OF EVERY KIND PERFECTED AGAINST THE REAL PROPERTY PRIOR TO THE ATTACHMENT OF THE LIEN.

*Id.*

Counsel for the City submitted in her post-trial brief the following statement by

the Maryland Department of Legislative Reference relating to proposed changes in Section 3–104:

> Under current law and practice, only liens for unpaid real property taxes and liens on real property for unpaid personal property taxes are granted special lien priority with regard to real property. If the taxes are unpaid, the taxing authority has the primary lien on the real property and all other liens on the real property are deemed subordinate.

Fiscal Note (Revised), Senate Bill 12, Department of Legislative Reference

No authority for that bald assertion was provided by the City, and this Court has failed to find any such authority in its own research. In the case of *Vermont Federal Savings and Loan Association v. Wicomico County*, 263 Md. 178, 283 A.2d 384 (1971), the Court of Appeals of Maryland held that a lien against real property in favor of Wicomico County for nonpayment of personal property taxes due primed the antecedent lien of the secured creditor because Section 248 of the Code of the Public Laws of Wicomico County provided that "All taxes due and owing by any taxpayer upon real or personal property or both shall be a prior lien on all the real estate of such taxpayer," and that the county law was supplemental to and not in conflict with the State statutes. 283 A.2d at 388. If the State statute, standing alone, accomplished this result without the aid of the local law, presumably the court of Appeals would have so held. That it did not is significant. Unfortunately for the position of the City, no such supplemental ordinance of Baltimore City has been found to reinforce the Code provisions to give the City's lien any special priority.

The rationale of this decision was further explained by the court in its later decision in *Farmers National Bank*, where it stated:

> Thus, in *Vermont Fed. S. & L.*, supra, we held that Wicomico County's tax claim was entitled to priority over an antecedent mortgage and security inter-

est. The relevant statute in that case, however, ... clearly provided that the county's tax claim constituted a prior lien as soon as the taxes were due and owing. The lien's priority was not restricted to property in an insolvent debtor's estate. *See* 263 Md. at 181, 283 A.2d 384 (*quoting* § 248 of the Code of Public Local Laws of Wicomico County (Everstine's ed.1965)).

306 Md. at 67–68, 507 A.2d at 182.

Therefore, the motion for summary judgment filed by the plaintiffs will be granted on the issue of the priority of its security interest over the lien of the Mayor and City Council of Baltimore for unpaid personal property taxes with respect to the debtor's real property at 2 North Wickham and the proceeds of sale thereof. However, with respect to the other parcels of land in which FINOVA held no security interest of record, namely 2 South Wickham Road, 110 South Wickham Road and 5002 Frederick Road, any lien thereon held by the Mayor and City Council of Baltimore for unpaid personal property taxes is incontestable by FINOVA.

ORDER ACCORDINGLY.