**UNITED STATES of America, Creditor, Appellant,**

v.

**Arthur T. WASSERMAN et al., Trustees, et al., Appellees.**

**No. 5336.**

United States Court of Appeals First Circuit.

July 18, 1958.

George F. Lynch, Atty., Dept. of Justice, Washington, D. C., Charles K. Rice, Asst. Atty. Gen., Lee A. Jackson and A. F. Prescott, Attys., Dept. of Justice, Washington, D. C., Anthony Julian, U. S. Atty., and Charles F. Barrett and Edgar L. Kelley, Asst. U. S. Attys., Boston, Mass., on the brief, for appellant.

Joseph Landis, Boston, Mass., Arthur T. Wasserman and Wasserman & Salter, Boston, Mass., on the brief, for Arthur T. Wasserman and others, trustees, appellees.

William H. Kerr, Boston, Mass., William L. Baxter, Corp. Counsel, Boston, on the brief, for City of Boston, appellee.

Before MAGRUDER, Chief Judge, and WOODBURY and HARTIGAN, Circuit Judges.

HARTIGAN, Circuit Judge.

This is an appeal by the United States from an order of the United States District Court for the District of Massachusetts affirming an order of the Referee in Bankruptcy in the matter of Post Publishing Company, Bankrupt. The order in issue decreed that the City of Boston real estate taxes for the year 1957 on certain unimproved real estate located on Pearl Street in the City of Boston were to be paid out of the proceeds from the sale of said property before such proceeds were to be applied in payment of any other lien claims.

The property in question was subject to a first mortgage recorded on April 3, 1956 in the amount of $150,000, a second mortgage recorded on April 18, 1956 for $120,000, a third mortgage for $300,000 recorded on April 18, 1956, and a fourth

mortgage recorded on July 11, 1956 for $250,000. There were additional liens of $16,371.16 and $19,415.29 for 1955 and 1956 Boston real estate taxes and a federal tax lien for $223,006.14 recorded on July 9, 1956, and a second federal tax lien for $66,575.76 recorded on August 8, 1956. On August 16, 1956 the Post Publishing Company filed a petition for reorganization under Chapter X of the Bankruptcy Act, 11 U.S.C.A. § 501 et seq. On March 7, 1957, no plan of reorganization having been proposed, the Post Publishing Company was adjudicated a bankrupt, and on April 11, 1957 the present trustees were duly elected and qualified. On April 3, 1957, after due notice and hearing and without objection by the appellant, the Referee in Bankruptcy authorized the sale of the Pearl Street real estate " * * * free and clear of all liens, mortgages, taxes, * * * and other encumbrances, of any nature, if any there be, said claims to the extent that they may hereafter be determined to be valid to attach to the proceeds of the sale" and it was further provided that "Real estate taxes for the year 1957 are to be apportioned as of the date of the delivery of the deed."

On August 9, 1957 the property was transferred to a purchaser who paid $475,000 for it plus a pro rata portion of the 1957 real estate taxes. The total 1957 real estate taxes were $21,216.20 and the pro rata portion of them attributable to the period from January 1, 1957 to August 8, 1957 is approximately $12,889.46.

■ Upon petition by the trustees to make payment out of the proceeds of the sale to the holders of the first and second mortgages in reduced amounts,[1] it was decided by the referee on September 16, 1957 that the Boston real estate taxes for the year 1957 on the Pearl Street property be paid out of the proceeds from the sale of said property as an expense of preservation before such proceeds be applied in payment of any lien claims.

■ The United States has appealed from this order apparently for the reason that if the proceeds from the sale exceed the amount of the mortgage liens prior and superior to its tax lien, then the amount payable to it should not be reduced by the amount claimed by the City of Boston for 1957 taxes. It first contends that the lien of the federal government being first in time is superior to the claim for 1957 taxes made by the City of Boston, but this contention is clearly without merit as the tax imposed by the City of Boston was assessed and became due only after the commencement of bankruptcy proceedings. It is, therefore, as the trustees contend, either payable as an expense of administration or preservation of that part of the bankrupt's estate upon which the government's lien attached or it is not payable at all.

The Supreme Court in Swarts v. Hammer, 1904, 194 U.S. 441, 444, 24 S.Ct. 695, 696, 48 L.Ed. 1060, declared that even though the trustee in bankruptcy is vested with title to all the property of the bankrupt, "By the transfer to the trustee no mysterious or peculiar ownership or qualities are given to the property. It is dedicated, it is true, to the payment of the creditors of the bankrupt, but there is nothing in that to withdraw it from the necessity of protection by the state and municipality or which should exempt it from obligations to either." It was held in that case that the trustee was obligated to pay local taxes assessed against the assets of the bankrupt estate during administration. See, also, Brown v. Collector of Taxes for Dist. of Col., 1957, 101 U.S. App.D.C. 200, 247 F.2d 786.[2]

1. The first mortgage was paid in the amount of $168,000 and the second mortgage was allowed in the amount of $90,000.

2. In view of the fact that these taxes in question were validly assessed (see Assessors of Boston v. John Hancock Mut. Life Ins. Co., 1948, 323 Mass. 242, 81 N.E.2d 366) and in light of the above settled principle that ordinarily the trustee shall pay those property taxes which are assessed on property while in his

■ In the instant case the bankrupt's property was subject to liens but the United States as lienholder agreed to the retention of possession of the property by the trustees for the purpose of sale free of liens. As the total amount of the purported liens far exceeded the value of the property as indicated by the actual selling price, there may be some question as to why the trustees undertook possession of the property. An answer might be supplied by the fact that only the City of Boston and the second mortgagee objected to the sale by the trustees free of liens (neither of whom sought review of the referee's order authorizing such sale) from which could be inferred that at least the other lienholders were under the impression that they would be benefited by a sale free of liens conducted by the trustees rather than undergo the possible complexities of their remedies under the state laws. It has been stated that when a lienholder consents to a sale free of liens the proceeds are chargeable with the actual costs of the sale plus costs reasonably incurred in the preservation of the property. Byrer v. Bushong, 4 Cir., 1940, 108 F.2d 594; Tawney v. Clemson, 4 Cir., 1936, 81 F.2d 301; 4 Collier on Bankruptcy (14th ed.) ¶ 70.-99, pp. 1606–1608. Certainly there is no question that the payment of the 1957 taxes was to the benefit of the mortgagees of the Pearl Street property in that it preserved the value of their security from diminution by reason of

unpaid Boston taxes, as their mortgages clearly were inferior to the taxes assessed by the City of Boston even though such taxes were assessed subsequent to the recording of the mortgages.[3] However, there is no benefit to the United States resulting from the payment of the 1957 taxes as the lien of the United States was intended to apply to any funds in excess of the amount necessary to pay prior lienholders only and was not to take into account any subsequent taxes which the state might declare to be superior to such prior liens. See United States v. City of New Britain, 1954, 347 U.S. 81, 74 S.Ct. 367, 98 L.Ed 520. Insofar as costs of preservation are concerned, federal liens are not analogous to mortgages held by private parties as the latter may by state law be rendered inferior to subsequent statutory liens for property taxes. See United States v. City of Greenville, 4 Cir., 1941, 118 F.2d 963, 966.

In this case we are concerned with the narrow problem of whether certain taxes, which are a cost of preservation to the senior lienholders, should be initially paid by a junior lienholder as to the preservation of whose lien the payment of these taxes is unnecessary. It is our conclusion that in view of the equitable nature of bankruptcy proceedings and the basic policy of protection of lienholders, the federal government's share of the proceeds should not be reduced because of the payment of the 1957 taxes which were of no benefit to

---

possession, we reject the argument of the trustees that the referee's order, which imposed liability upon the trustees for the 1957 taxes, was incorrect because such taxes were assessed to the Post Publishing Co. rather than to the trustees themselves.

3. Since the trustees presumably acted in the interests of the general creditors in taking possession of the mortgaged property, the amounts deducted from the proceeds paid to the mortgagees may be claims against the general estate, if any, entitled to the priority of administration expenses set forth in § 64, sub. a(1) of the Bankruptcy Act, 11 U.S.C.A. § 104, sub. a(1). See Hammond v. Carthage

Sulphite Pulp & Paper Co., 2 Cir., 1925, 8 F.2d 35, 38; MacGregor v. Johnson-Cowdin-Emmerich, Inc., 2 Cir., 1930, 39 F.2d 574, 577. This expense of preservation is not comparable with a cost of sale which the mortgagee would have had to pay in any event. Since the mortgagees did not join in this appeal challenging the correctness of the referee's order, this perhaps precludes the possibility that the particular provisions of the various mortgages involved may contain valid clauses adding costs of enforcement to the obligation of the debtor protected by the lien. See In re Street, 3 Cir., 1950, 184 F.2d 710; Oppenheimer v. Oldham, 5 Cir., 1949, 178 F.2d 386.

it. Rather, the city taxes should be allocated solely against the fund set aside for the payment of mortgages.

The order of the district court is vacated and the case is remanded to that court for the entry of an order in conformity with this opinion.