**In re SUMMIT VENTURES, INC., Summit Realty, Inc., Summit of Brownsville Management Inc., Summit Food Services, Inc., Summit Wastewater Company, Inc., Mt. Ascutney Associates, Mt. Ascutney Associates Realty Company, Inc., Summit Water Company, Inc., Robert Trent Jones, Jr. Golf and Conference Center, Debtors.**

**Bankruptcy Nos. 90–00213 to 90–00221.**

United States Bankruptcy Court, D. Vermont.

Sept. 19, 1991.

484

ment[2], filed January 25, 1991, requires us to determine the status of the Town's claims for taxes owed by two of the debtors in this jointly administered Chapter 7 proceeding. The Town's claim against Mt. Ascutney Associates ("Mt. Ascutney") is for $147,858.64 in 1990 real and personal property taxes, and against Summit Ventures, Inc., ("Summit") for $2,752.77 in personal property taxes. The Town also seeks penalties and interest which have accrued against both Debtors since the taxes first became due on Nov. 1, 1990.[3] We hold that the Town has a secured claim for 1990 real property taxes, and is entitled to interest on that claim, but not to penalties.

By bringing its Petition, the Town implements an agreement with the Debtors contained in a Stipulation for Order Authorizing Installment Payment of Real Estate Taxes, filed with the Court Dec. 17, 1990. That agreement, approved by the Court by Order dated Jan. 14, 1991, required the Debtors to begin making installment payments on their tax obligations to the Town, while the nature and extent of those obligations were sorted out. The Stipulation required the Town to bring this declaratory judgment action to decide the following issues:

(1) Whether the 1990 property taxes are an administrative expense pursuant to 11 USC 503(b)(1)(B)(i),[4] and if so, whether the Town is entitled to immediate payment.

(2) Whether, for the 1990 real estate taxes, the Town is entitled to priority un-

M. Davis, Davis, Rounds & Springer, P.C., Windsor, Vt., for Town of West Windsor (Town).

D. Wolinsky, and P. Saxer, Saxer, Anderson, Wolinsky and Sunshine, Burlington, Vt., for debtors.

MEMORANDUM OF DECISION ON TOWN OF WEST WINDSOR'S PETITION FOR DECLARATORY JUDGMENT

FRANCIS G. CONRAD, Bankruptcy Judge.

■ Resolution[1] of the Town of West Windsor's Petition for Declaratory Judg-

---

**1.** We have jurisdiction to hear this matter under 28 U.S.C. 1334(b) and the General Reference to the Court under Part V of the Local District Court Rules for the District of Vermont. This matter is a core proceeding under 28 U.S.C. 157(b)(2)(N). This Memorandum of Decision constitutes findings of fact and conclusions of law under Fed.R.Civ.P. 52, as made applicable by Fed.R.Bank.P. 7052.

**2.** The Town's Petition should have been filed as an adversary proceeding, Fed.R.Bank.P. 7001, and commenced by filing of a complaint. Fed. R.Bank.P. 7003. Bankruptcy Service, L Ed 1:98, at 97 (1989). No objection has been made to the improper procedure, so we will address the substance of the Town's Petition.

**3.** At the time it filed the Petition now before us, the Town claimed $11,828.69 in penalties and $4,435.76 in interest was due from Mount Ascutney, and $220.22 in penalties and $82.58 in interest was due from Summit.

**4.** 11 U.S.C. 503(b)(1)(B)(i) provides:

(b) After notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section 502(f) of this title, including—
(1)(B) Any tax—
(i) incurred by the estate, except a tax of a kind specified in section 507(a)(7) of this title.

der 11 USC 507(a)(1) or (7).[5]

(3) Whether the Town is entitled to the allowance of penalties and interest for real estate taxes not paid in full by November 1 of the year in which they became due.

(4) Whether, if installment payments made during the 1991 calendar year are applied to 1991 taxes, rather than 1990 taxes, the Debtor is entitled to an interest credit for all payments made in advance of the date upon which the 1991 taxes become finally due.

▇▇▇ The parties, in their pleadings and appearances before us, have focused almost exclusively on the real property tax claims. The issues relating to personal property taxes have not been briefed, nor have we been provided with the basic facts necessary to understand what happened when. A court may decline to address issues not adequately presented. *In re HECI Exploration Co., Inc.*, 862 F.2d 513 (5th Cir.1988). Accordingly, we make no determination as to the status of the Town's claim for personal property taxes, or for penalties and interest thereon.

▇▇▇ The Town initially argued that its claim for real property taxes was an administrative expense under 503(b)(1)(B)(i), because the taxes didn't become due until after commencement of the Debtors' bankruptcies. Section 503(b)(1)(B)(i) classifies as an administrative expense "any tax incurred by the estate, except a tax of a kind specified in section 507(a)(7)." Administrative expenses are entitled to first priority in payment, 11 U.S.C. § 507(a)(1), and, in the discretion of the Court,[6] to payment upon request. 11 U.S.C. § 503(a). The Debtors filed petitions for relief under Chapter 11 on April 27, 1990.[7] The Town has exercised the authority granted to it by 32 V.S.A. § 4773 [8] to make November 1 the due date for its property taxes.

Debtors countered that their tax obligations to the Town were not "incurred by the estate," but arose prepetition, on April 1, 1990, the date established by the Vermont legislature for determining record ownership [9] and fair market value [10] of taxable property. The tax claim is unsecured, they say, because, under Vermont law, a real property tax lien is not created until the Town's grand list is filed in the town clerk's office.[11] The parties have stipulated that May 15, 1990 is the date on which the Town's grand list was filed. Debtors argue that by filing their petitions for relief after the tax obligation arose, but before the lien securing it was created, they have turned the Town into an unsecured creditor barred by the automatic stay

5. In pertinent part, 11 U.S.C. 507(a) provides:
(a) The following expenses and claims have priority in the following order:
(1) First, administrative expenses allowed under section 503(b) of this title, and any fees and charges assessed against the estate under chapter 123 of title 28.
....
(7) Seventh, allowed unsecured claims of governmental units, only to the extent that such claims are for—
....
(B) a property tax assessed before the commencement of the case and last payable without penalty after one year before the date of the filing of the petition.

6. 3 *Collier on Bankruptcy* 503.01, 503–5 (L. King ed. 1991).

7. These cases were converted to Chapter 7 by order dated April 12, 1991.

8. 32 V.S.A. § 4773 authorizes "[a] municipality, by vote at a meeting at which a tax is raised, [to] fix a date or dates for the payment of the tax."

9. 32 V.S.A. § 3651 provides that "[t]axable real estate shall be set in the list to the last owner or possessor thereof on April 1 in each year in the town, village, school and fire district where it is situated."

10. 32 V.S.A. § 3482 requires that "all real and personal estate shall be set in the list at one per cent of its listed value on April 1, of the year of its appraisal." "Listed value" is defined as "equal to 100 percent of the appraisal value," by 32 V.S.A. § 3481(2), and "appraisal value" is defined by 32 V.S.A. § 3481(1) as "estimated fair market value."

11. 32 V.S.A. § 5061(a) provides in pertinent part: "Commencing with the date of the filing by the listers of the grand list in the office of the town clerk of the town, taxes lawfully assessed upon real estate shall be a first lien thereon, underlying all mortgages, attachments, liens, or other encumbrances thereon, and all estates for the term of a natural life or lives, for a term of years or for any other duration."

provisions of 11 U.S.C. § 362(a)(5) [12] from perfecting its lien on their real property. Under this theory, the Town's claim would be squarely within the confines of 11 U.S.C. § 507(a)(7)(B)—an unsecured claim of a governmental unit for a "property tax assessed before the commencement of the case and last payable without penalty after one year before the date of the filing of the petition." This classification, if correct, would knock the Town's claim out of the administrative expense category, 11 U.S.C. § 503(b)(1)(B)(i), and drop its priority ranking from first place to seventh. 11 U.S.C. § 507(a). Given the asset posture of these converted Chapter 7 cases, the result would be to make payment of the Town's claim highly unlikely.

Upon reflection, the Town abandoned its administrative expense theory. Like the Debtors, it now points to April 1 as the significant date. But, while the Debtors see April 1 as the date upon which their tax obligations arose, the Town argues that April 1 is actually the date upon which it acquired an interest in the property of the Debtors. Filing of the grand list on May 15, the Town says, gave it a postpetition tax lien to secure that prepetition interest in the Debtors' property.

The Town's new theory, which we agree is the law in the Second Circuit, is based on 11 U.S.C. § 362(b)(3), which excepts from the automatic stay provisions of 362(a) "any act to perfect an interest in property to the extent that the trustee's rights and powers are subject to such perfection under section 546(b)." Section 546(b), in turn, makes the "rights and powers of a trustee under sections 544, 545 and 549 ... subject to any generally applicable law that permits perfection of an interest in property to be effective against an entity that acquires rights in such property before the date of such perfection."

[S]imply stated, if a creditor possesses a prepetition interest in property, and state law establishes a time period for perfection of a lien based upon that interest, the "lien does not lose its preferred standing by reason of the fact that it [is] not perfected until after the commencement of bankruptcy" so long as it is perfected within the time period established by state law. *Lincoln Savings Bank, FSB v. Suffolk County Treasurer (In re Parr Meadows Racing Ass'n, Inc.),* 880 F.2d 1540, 1546 (2d Cir.1989), *cert. denied* by *Suffolk County Treasurer v. Barr,* 493 U.S. 1058, 110 S.Ct. 869, 107 L.Ed.2d 953 (1990) (quoting *Poly Industries, Inc. v. Mozley,* 362 F.2d 453, 457 (9th Cir.1966), *cert. denied,* 385 U.S. 958, 87 S.Ct. 393, 17 L.Ed.2d 304 (1966)).

The purpose of 546(b), which is derived from former 67(c)(1)(B), 11 U.S.C. § 107, of the Bankruptcy Act of 1898, "is to protect, in spite of the surprise intervention of [a] bankruptcy petition, those whom State law protects by allowing them to perfect their liens or interests as of an effective date that is earlier than the date of perfection." *In re APC Construction, Inc.,* 112 B.R. 89, 111 (Bkrtcy.D.Vt.1990), (quoting H.R.Rep. No. 595, 95th Cong., 1st Sess. 371 (1977); S.Rep. No. 989, 95th Cong., 2d Sess. 86 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5787, 5872, 6327, reprinted in 4 Norton Bankruptcy Law and Practice, p. 464). "Not insignificantly, 546(b) speaks of an 'interest in property,' and does not limit its scope to 'liens,' whether so defined by federal or state law." *Maryland National Bank v. Mayor and City Council of Baltimore,* 723 F.2d 1138, 1141–42 (4th Cir. 1983).

The broad sweep of 32 V.S.A. § 5061(a) leaves little doubt either as to its general applicability, or to the priority of a tax lien, once perfected, "against an entity that acquires rights in such property before the

---

**12.** 11 U.S.C. § 362(a)(5) provides:

(a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title, or an application filed under section 5(a)(3) of the Securities Investor Protection Act of 1970 (15 U.S.C. 78eee(a)(3)), operates as a stay, applicable to all entities, of—

(5) any act to create, perfect or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title.

date of such perfection." 11 U.S.C. § 546(b).

Commencing with the date of the filing by the listers of the grand list in the office of the town clerk of the town, taxes lawfully assessed upon real estate shall be a first lien thereon, underlying all mortgages, attachments, liens, or other encumbrances thereon, and all estates for the term of a natural life or lives, for a term of years or for any other duration. 32 V.S.A. § 5061(a).

■ To invoke the 546(b) route around the automatic stay, however, a creditor must establish more than a generally applicable statute and an interest that would prevail if perfected. "While there should be no doubt that 362(b)(3) excepts the perfection of certain liens," Senior Bankruptcy Judge Charles J. Marro has written, "it is manifestly as clear that creation, as opposed to perfection, is not excepted." *In re New England Carpet Company, Inc.*, 26 B.R. 934, 939 (Bkrtcy.D.Vt.1983). Rather, "a creditor's underlying interest must be created prior to the petition, [so] that the interest need only be perfected after the petition date." *Id.*

Determining when an "interest in property" arises must "depend heavily on state tax law." *In re Parr Meadows, supra,* 880 F.2d at 1548. *See also In re Shoreham Paper Co.,* 117 B.R. 274, 275 (Bkrtcy. W.D.Mich.1990) ("[S]tate law governs as to when tax liens are created and perfected."). Judge Marro's holding was based on the specific language of 32 V.S.A. § 5072, which provides that filing of a notice of lien "shall thereby *create* and constitute a tax lien on such personal property therein described." (Emphasis added). He concluded that, under the specific state statute at issue before him, the Town's interest was created by filing of the notice of lien. Thus, there was no prepetition interest in the taxpayer's personal property to be perfected postpetition under 546(b).[13] *In re New England Carpet Company, Inc., supra,* 26 B.R. at 938–40. *See also* Judge Marro's opinion in *In re Cummings Market, Inc.,* 53 B.R. 224, 225 (Bkrtcy.D.Vt. 1985).

■ We have not previously determined at what point in the process of real estate taxation in Vermont a town first acquires an interest in the taxable real property within its borders for purposes of 546(b). Recently, in the *APC Construction* case, we recognized Vermont's contractor lien legislation [14] as one area in which a prepetition interest created by a statute of general applicability may be perfected postpetition under the authority of 546(b). *In re APC Construction, supra,* 112 B.R. at 117. The statute involved there clearly delineates when the "interest in property" arises, and how it is subsequently preserved, perfected, and ultimately enforced.[15] The contractor's lien arises at the time work begins or materials are delivered.[16] It is preserved by filing of a writ-

---

**13.** Whether the analysis of *New England Carpet* is focused too narrowly on the issue of when a lien is created, as opposed to when "an interest in property" arises is not now before us.

**14.** 9 V.S.A. ch. 51, subch. 1. We lay out the specific provisions of the Vermont contractor's lien statute in footnotes to the discussion which follows, as an aid to understanding our decision today.

**15.** For an explication of the contractor's lien statutes and the Vermont Supreme Court cases construing them see *In re APC Construction, Inc., supra,* 112 B.R. at 100–106.

**16.** 9 V.S.A. § 1921 provides:

"(a) When a contract or agreement is made, whether in writing or not, for erecting, repairing, moving or altering improvements to real property or for furnishing labor or material therefor, the person proceeding in pursuance of such contract or agreement shall have a lien upon such improvements and the lot of land on which the same stand to secure the payment of the same.

"(b) A person who by virtue of a contract or agreement, either in writing or parol, with an agent, contractor or subcontractor of the owner thereof, performs labor or furnishes materials for erecting, repairing, moving or altering such improvements shall have a lien, to secure the payment of the same upon such improvements and the lot of land upon which the same stand, by giving notice in writing to such owner or his or her agent having charge of such property that he or she shall claim a lien for labor or material. Such lien shall extend to the portions of the contract price remaining unpaid at the time such notice is received."

ten notice in the town clerk's office within 120 days of the date payment was due for the last of the work performed or materials delivered.[17] And it must be perfected by obtaining an attachment on the liened property in a suit for payment.[18] The judgment eventually obtained must be timely recorded in the land records, after which it can be foreclosed upon if not paid.[19] Based on this clearly defined statutory sequence, we held that when a lien arises prepetition and perfection takes place postpetition, "a *timely perfected* contractors' lien will relate back to the time of recording of a notice of lien or 'visible commencement' of work." *In re APC Construction, Inc.,* *supra,* 112 B.R. at 117 (emphasis added). Because "timely perfection of a contractors' lien is not subject to the Code's automatic stay," we held, "by definition, the contractors' lien perfection period is not tolled." Thus, "[f]ailure to timely perfect will not be excused because of a debtor's filing bankruptcy." *Id.* Accordingly, if the Town had a prepetition interest in the Debtors' taxable real property, the automatic stay will neither bar perfection nor excuse a failure to perfect.

■ Both the *New England Carpet* and *APC Construction* cases focused on the date a lien is created as the point at which the interest in property arises. The specific language of the contractor's lien statutes made that focus clearly appropriate in *APC Construction.* The plain language of 546(b) and the Second Circuit's analysis of a New York property tax lien law in *In re Parr Meadows,* however, require us to distinguish creation of the lien from creation of "an interest in property." The two events may, but need not, occur simultaneously. In an appropriate case, where the facts are clearly presented and the legal issues adequately briefed, we may have to reconsider the holding in *New England Carpet* in light of *In re Parr Meadows.*[20]

Vermont's real property tax laws, however, are materially and significantly different from the state's personal property tax laws. Real and personal property tax liens differ fundamentally, both in how they are created, and in their effect once created. It is the real property taxes themselves which are, when "lawfully assessed," a lien established automatically

**17.** A lien given by 9 V.S.A. § 1921(a) or (b) "shall not continue in force for more than one hundred and twenty days from the time when payment became due for the last of such labor performed or materials furnished unless a notice of such lien is filed in the office of the town clerk as hereinafter provided." 9 V.S.A. 1921(c). The form of notice is mandated by 9 V.S.A. 1923: "A person claiming a lien under section 1921 of this title, shall file for record in the clerk's office of the town where such real estate is situated, a written memorandum, signed by him, asserting his claim, which shall charge such real estate with such lien as of the visible commencement of work or delivery of material to the extent and subject to the exceptions provided in sections 1921 and 1922 of this title...."

**18.** "Within three months from the time of filing such memorandum, if such payment is due at the time of such filing and within three months from the time such payment becomes due, if not due at the time of such filing, such person may commence his action for the same, and cause such real estate or other property to be attached thereon." 9 V.S.A. § 1924. The Vermont Supreme Court has held that "may" means "must." *See, e.g., In re APC Construction, Inc., supra,* 112 B.R. at 104 (Vermont Supreme Court has held that "the contractor lienor had to obtain an

order for the writ within the three month period prescribed under 1924 as 'a requisite to preserving the statutory lien'" (quoting *Filter Equipment Co., Inc. v. I.B.M. Corp.,* 142 Vt. 499, 503, 458 A.2d 1091 (1983))).

**19.** "If he obtains judgment in the action, the record of such judgment shall contain a brief statement of the contract upon which the same is founded." 9 V.S.A. § 1924.

"Within five months after the date of such judgment, the plaintiff may cause a certified copy of the record thereof to be recorded in the office of the clerk of the town in which such real estate or other property is situated. Thereupon the same shall be holden for the amount due upon such judgment, with the costs of such copy and recording the same, as if it had been mortgaged for the payment thereof, from the time of the visible commencement of work or delivery of materials, ... and the plaintiff may obtain possession and foreclose the defendant's equity of redemption as in case of a mortgage." 9 V.S.A. § 1925.

**20.** *But cf. Maryland National Bank,* supra, 723 F.2d at 1144, n. 14, which distinguishes the holding in *New England Carpet* that personal property tax liens were avoidable, from its own holding that the real property tax liens before it could not be avoided.

upon all taxable realty within the town, "[c]ommencing with the date of the filing by the listers of the grand list in the office of the town clerk ...". 32 V.S.A. § 5061(a). Filing of the grand list is a mandatory annual event. 32 V.S.A. § 4151(a). Real property taxes become a first lien on taxable property, "underlying" all other encumbrances, interests or estates for a period of 15 years. 32 V.S.A. § 5061(a).

By contrast, personal property tax liens arise only when the tax collector, with the prior approval of the town's selectmen or aldermen, exercises discretionary authority to act with respect to a particular taxpayer, and files a notice of tax lien, 32 V.S.A. § 5071. It is the filing of the notice which "thereby create[s] and constitute[s] a tax lien on personal property." 32 V.S.A. § 5072. The effectiveness of a personal property tax lien, once created by filing of the notice, is limited to "priority in law over any other lien having priority in time" for a period of two years. *Id.* A personal property tax lien is not enforceable "against a bona fide owner who has purchased such property for value without actual notice of such lien from any person other than the taxpayer to whom such property is listed." *Id.* The consequence of these differences is that our holding today with respect to real property taxes does not determine the status of personal property tax liens.

The New York real property tax legislation before the court in *Parr* parallels Vermont's law in several significant ways. Both establish what the Second Circuit calls a "tax status date"—April 1 in Vermont, June 1 in Suffolk County New York—to determine record ownership and valuation, with lien attaching and payment due subsequently. In Vermont, 32 V.S.A. § 3651 establishes April 1 as the date for determining record ownership of taxable real property, and 32 V.S.A. § 3482 makes April 1 the appraisal date. The applicable New York provisions "require that town assessors assess all real property located in their respective towns according to its condition and ownership 'as of' the tax status date for each year—June 1 in Suffolk County. N.Y. Real Prop. Tax Law 302;

Suffolk County Tax Act 5 ..." *In re Parr Meadows, supra,* 880 F.2d at 1542.

The Second Circuit's description of the annual real estate taxation process in Suffolk County New York closely approximates the substantive effect of Vermont's procedures.

[E]ven though the property taxes will not be levied or paid until at least six months later, and even though the value and use of the land could change dramatically before that time, the assessment of the property, which will be used to determine the tax due, is made by looking only to the value of the property on the tax status date, without any regard to possible changes in condition or ownership before the lien attaches.

Of course, after the tax status date other acts are required before the amount of the tax is determined and the lien securing that tax attaches to any particular piece of property. *In re Parr Meadows, supra,* 880 F.2d at 1547.

Accordingly, we are bound by *Parr*'s holding that "these acts are merely further steps towards the completion of the taxation process and the perfection of the [Town's] interest in the property—an interest which arose on the tax status date when the [Town] determined that the property was taxable, and when it fixed the value of the property for that tax year." *Id.*

Although we are bound to follow *Parr,* the opinion leaves us with the feeling that the Second Circuit has overshot the solid ground on one side of a difficult issue, and pulled up short of the solid ground on the other side, ending up mired in the middle in a swamp of its own making. Its analysis leaves us with unresolved, nagging questions about how an interest that wasn't there before can suddenly spring to life on the tax status date. "Does interest refer to something akin to a security interest, lien or mortgage or to an entity's mere expectation of payment?" *In re Shoreham Paper Co., supra,* 117 B.R. at 281. The Third Circuit Court of Appeals looked both at *Parr* and the underlying New York

tax lien statute in *Makoroff v. City of Lockport, N.Y.*, 916 F.2d 890, 895–96 (3d Cir.1990), and refused to follow the Second Circuit's holding, despite the fact that *Parr* was the considered opinion of the local circuit on the very question presented. The only interest the Third Circuit found was a mere expectation of payment that was unaffected by anything that happened on the tax status date.

> [T]he tax status date is an arbitrary date chosen solely for ease in tax administration. Immediately following that date, the taxing entity still possessed no more than an expectation that taxes will be collected with respect to a particular property.... Calling such an expectation an "interest in property" before the amount of the tax is established and a perfectible lien created, stretches the scope of that phrase far beyond its commonly understood meaning. *Makoroff, supra,* 916 F.2d at 895–96.

Were we unfettered by the chains of *stare decisis,* we might look beyond the "tax status date," to the nature of a town's interest in taxable property under Vermont's statutory law, and to the purposes of 546(b). We might note that the Vermont real property taxes at issue in the case before us are an interest in property which, outside of bankruptcy, "always will be good against a *bona fide* purchaser," *Maryland National Bank, supra,* 723 F.2d at 1143, n. 11, and, indeed, against every other encumbrance and estate. 32 V.S.A. § 5061(a). "[I]f, as a consequence of bankruptcy of the borrower, the real estate taxes could be avoided, pure manna from heaven in the form of an unanticipated and unmerited benefit would arise ..., and no Congressional objective would be served." *Id.,* 723 F.2d at 1146. We might thereupon be tempted to conclude that an unavoidable interest in property is created, not on the tax status date, but "by force of the generally applicable law" of Vermont, an interest which is always and "ever-present." *Id.,* 723 F.2d at 1142. *Parr,* however, both criticized and distinguished the holding of the Fourth Circuit in *Maryland National Bank v. Mayor & City Council of Baltimore,* 723 F.2d 1138,

1142–43 (4th Cir.1983), that a Maryland county's " 'interest in property', at least as far as taxation is concerned, is so 'longstanding' and 'ever-present', that 'a new, super-priority tax lien' arises every year without regard to when the bankruptcy commenced." *In re Parr, supra,* 880 F.2d at 1546–48.

Thus, *Parr* seems to us to be a confused compromise between two contending theories about the nature of a taxing authority's interest in taxable real property under laws which appear to us be substantively similar. On the one hand, *Parr* stops short of subscribing to the theory that the right, outside of bankruptcy, always to hold real property responsible for payment of each year's taxes, ahead of all other prior interests and estates, is in fact an "interest in property" which is "ever-present." *Maryland National Bank, supra,* 723 F.2d at 1142–43. On the other hand, *Parr* wants to go farther than the theory that an interest is never present until after the taxes have actually been accrued and the lien has been created. *Makoroff v. City of Lockport, N.Y., supra,* 916 F.2d at 895–96; *In re Shoreham Paper Co., supra,* 117 B.R. at 281.

Were we free to do so, we would avoid the muddled middle ground that *Parr* digs out, and head for the high ground on one side of the issue or the other. We are in the Second Circuit, however, and, as a unit of the district court, 28 U.S.C. § 151, "owe obedience to a decision of the court of appeals ... and must follow it until the court of appeals sees fit to overrule it." 1B J. Moore, J. Lucas & T. Currier, Moore's Federal Practice 0.402[1], 13–14 (2d ed. 1991). The case before us today falls squarely within the confines of *Parr*'s analysis, and does not require us to decide what the status of a claim for real property taxes would be if Debtors had filed their petitions before the tax status date. Thus, we hold merely that the Town of West Windsor had an interest in the Debtors' real property on April 1, 1990. We do not reach the broader issues of (a) whether an "ever-present" interest can ever be present after *Parr,* and, if so, (b) whether features unique to Vermont's law create such an interest.

Accordingly, *Parr* requires us to resolve the first two of the four issues raised by the Town in the Petition before us by holding that the 1990 real property taxes are not administrative expenses under 11 U.S.C. § 503(b)(1)(B)(i), and are not entitled to priority under either 507(a)(1) or (7). Rather, the Town had a prepetition interest in the Debtors' real property that was in place on April 1, and that became a first lien, postpetition, when the Town's grand list was filed on May 15. Recognition of the Town's lien does not violate the automatic stay against "any act to create, perfect, or enforce any lien against property of the estate" provided by 362(a)(4), because the lien falls within the exception provided by 362(b) for postpetition perfection "to the extent that the trustee's rights and powers are subject to such perfection under section 546(b)." The Town's claim for real property taxes is thus secured by a first lien, as provided by 32 V.S.A. § 5061. The Town must pursue its remedies as a secured creditor, because its claim for 1990 taxes is not an administrative expense under 503(b), and thus is not entitled to payment under 503(a).

■■■■ *Parr* also controls our limited holding with respect to the third issue raised—the Town's request that we determine whether it is entitled to the allowance of penalties and interest for real estate taxes not paid in full by November 1 of the year in which they become due. Our holding is limited to the claim for penalties and interest for the 1990 real estate taxes. To decide in this case whether interest and penalties should be allowed on taxes incurred by the estate during the bankruptcy would be inappropriate and unwise because the issue is not presently in controversy by the parties before us, and has not been briefed or argued.[21] As *Parr* noted,

the Supreme Court, interpreting the language and punctuation of 506(b), has held that the section "entitles one having a secured claim to postpetition interest and, in addition, gives one having a secured claim created pursuant to an agreement the right to reasonable fees, costs, and charges provided for in that agreement. Recovery of postpetition interest is unqualified." *In re Parr Meadows, supra,* 880 F.2d at 1549 (quoting *United States v. Ron Pair Enterprises, Inc.,* 489 U.S. 235, 241, 109 S.Ct. 1026, 1030, 103 L.Ed.2d 290, 298 (1989).

Accordingly, the Town is entitled by 506(b) to interest on its secured claim for 1990 real property taxes, to the extent of the value of its security. But, 506(b) precludes recovery of penalties, because they arose "not under an agreement between the parties, but by operation of law." *Id.*

Recovery of fees, costs, and charges ... is allowed only if they are reasonable and provided for in the agreement under which the claim arose. Therefore, in the absence of an agreement, postpetition interest is the only added recovery available. *United States v. Ron Pair Enterprises, Inc., supra,* 489 U.S. at 241, 109 S.Ct. at 1026, 103 L.Ed.2d at 298.[22]

The result of our decision that the Town's 1990 claim for real estate taxes is secured will be that the Debtors' installment payments in 1991 will go toward 1990 taxes, making it unnecessary for us to decide the fourth issue presented by the parties.

Counsel for the Town of West Windsor is to settle an order consistent with this opinion.

---

**21.** These shortcomings are especially significant in view of the fact that along the way to resolving this issue, we would first have to determine the fundamental nature of a town's interest in taxable property.

**22.** Note the anomalous treatment afforded tax penalties depending upon the status of the underlying tax claim. *Ron Pair* precludes any recovery of penalties on secured tax claims. If

the tax claim is an administrative expense, however, so is "any fine, penalty, or reduction in credit" arising from the tax, 11 U.S.C. § 503(b)(1)(C), and both receive first priority. 11 U.S.C. § 507(a)(1). Penalties on tax claims which are neither secured nor an administrative expense are to be allowed only if "in compensation for actual pecuniary loss." 11 U.S.C. § 507(a)(7)(G).